# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TYRONE D. PERKINS, SR., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-0840 (ESH) |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Tyrone D. Perkins requested information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the Department of Veterans Affairs ("VA") regarding employee training at the VA's Information Technology Center ("ITC"). Plaintiff also sought a waiver of the fees associated with his request, claiming that disclosure of the information was in the public interest as required by FOIA's fee waiver provision, *id.* § 552(a)(4)(A)(iii). Defendant's denial of this request has prompted this suit. Before the Court are the parties' cross-motions for summary judgment, and upon consideration of the pleadings and relevant law, the Court will grant defendant's motion.

## BACKGROUND

The ITC is a division of the VA consisting of approximately 86 employees who provide "information technology support and services to the VA, veterans, and other stakeholders." (Def.'s Statement of Material Facts not in Genuine Dispute ["Def.'s Facts"] ¶ 1; Decl. of Carol A. Winter, Director of ITC ["Winter Decl."] ¶ 2.) On November 14, 2006, plaintiff sent the ITC a FOIA request seeking, for the fiscal year beginning October 1, 1999 through the fiscal year

ending September 30, 2006: (1) training plan reports containing the name of the employee enrolling in the training, priority, course title/subject, division, dates, vendor, location, cost, travel, and justification; (2) training cost reports containing initials, IT tracking numbers, date approved, order date, item acquired, vendor name, cost, balance of funds, date received, date hit in the Status of Funds, and Visa credit card date; and (3) all other training reports used and/or created in connection with training utilized locally and/or submitted to the VA Central Office.[1] (Compl. ¶ 15.) Plaintiff also asked that the fees associated with his request be waived because he intended to use the information as part of his research regarding "training and career planning and advancement" within the ITC, and would not use it for commercial purposes. (*Id.*)

Defendant's FOIA officer at the ITC responded to plaintiff by letter dated February 20, 2007, stating that the fee for his request was $1,033.90, and it would not be waived because plaintiff's request did not meet the VA's criteria for a public interest fee waiver as set forth in 38 C.F.R. § 1.555(f). (Pl.'s Statement of Material Facts ["Pl.'s Facts"] ¶ 6.)

Plaintiff replied that he was unable to pay the full fee, but could pay one-third of the fee, or $344.63. (Pl.'s Facts ¶ 7.) In exchange, defendant offered to grant plaintiff a portion of his original FOIA request.[2] (Def.'s Facts ¶ 7; Def.'s Mot. for Summ. J. ["Def.'s Mot."], Attach. 1 at 9.) Plaintiff rejected this offer and instead provided additional information in support of his fee waiver request. (Pl.'s Facts ¶ 9.) Plaintiff stated that he had contacted Temple University's

---

[1] The IT Tracker is an automated system that tracks all VA IT purchases, including training requests, and the Status of Funds is a "VA Financial Management System collection of reports that identifies funds that have been obligated for training and other purposes." (Winter Decl. ¶ 4 nn. 1-2.)

[2] Specifically, defendant offered to provide, for any three-year period of plaintiff's choice: (1) training logs, ITC training plan listing approvals/disapprovals, quarterly listings for divisional training plans, and class rosters for onsite training classes; and (2) IT procurement logs for training through January 6, 2006. (Def.'s Facts ¶ 7; Def.'s Mot., Attach. 1 at 9.)

School of Business and Management to assist him in analyzing the data requested in accordance with professional statistical standards, and that once he had completed the statistical reports, he would share them with a broad audience, including congressional representatives, civil rights organizations, labor organizations, journalists, and his fellow VA coworkers. (*Id.*; Def.'s Mot., Attach. 1 at 10.)

Defendant again denied plaintiff's request for not meeting the VA's requirements for a fee waiver. (Pl.'s Facts ¶ 10; Def.'s Mot., Attach. 1 at 11.) On October 19, 2007, plaintiff appealed this decision to defendant's Office of the General Counsel. (Pl.'s Facts ¶ 11; Def.'s Mot, Attach. 1 at 12.) In his appeal, plaintiff claimed that he intended to use the requested information to evaluate whether there were "any significant racial training and travel disparities" within the ITC. (Def.'s Mot., Attach. 1 at 13.) Plaintiff stated that he had worked for the ITC for more than 30 years and was currently a Senior Information Technology Specialist in which capacity he had, *inter alia*, served as the "lead technical consultant of numerous major VA technical projects;" researched and implemented "new areas of inter-connectivity, interoperability or system integration;" and participated in the "evaluation, analysis, and formulation of policy and procedures to include assurance of optimum response time in transaction processing." (*Id.*) Plaintiff also stated that he was a permanent member of the National Association for the Advancement of Colored People Federal Sector Task Force on Discrimination in the Federal Government ("NAACPFSTF"), and he had previously analyzed FOIA information concerning racial disparities within other federal agencies, including the Department of the Army. (*Id.*) Finally, plaintiff described his intention to share the results of his analysis with federal labor unions such as the American Federation of Government Employees

("AFGE"); congressional committees that oversee federal agencies; civil rights organizations such as the NAACP; and national news outlets including the *Federal Times*. (*Id.*)

On March 26, 2008, defendant's General Counsel issued a final administrative decision denying plaintiff's fee waiver request because the records requested did not identify the race or ethnicities of the ITC's employees, and thus would not significantly increase the public's understanding of racial disparities in training and travel within the ITC. (Def.'s Mot., Attach. 1 at 15-16.) Defendant also found that plaintiff had not demonstrated that he was able to evaluate, analyze, and present the voluminous materials requested in a form understandable to the general public. (*Id.*)

Plaintiff asked defendant to reconsider its decision, and by letter dated June 23, 2008, he submitted additional information regarding his ability to extract racial trends from the records requested, analyze complex data and disseminate it.[3] (Pl.'s Facts ¶ 14; Def.'s Mot., Attach. 1 at 17-23.) Defendant's Assistant General Counsel responded that the agency's decision on March 26, 2008, was final, and that in any case, the additional information was insufficient to warrant a fee waiver. (Pl.'s Facts ¶ 15; Def.'s Mot., Attach. 1 at 24.) Plaintiff then initiated this action, and the parties have cross-moved for summary judgment.

---

[3] Specifically, plaintiff stated that he was aware of the racial makeup of the ITC's workforce and intended to survey ITC employees to verify their races. He also detailed his responsibilities as an Information Technology Specialist, which included, *e.g.*, researching proposed systems changes, new applications, and the like, and advising management accordingly; producing reports for technical and non-technical audiences; and staying abreast of technological developments in order to recommend innovations that would benefit the ITC. Finally, he stated that as president of the AFGE and a member of the NAACPFSTF and the Philadelphia Chapter of Blacks in Government ("BIG"), he had analyzed complex racial data, routinely met with congressional delegations regarding employment issues in the VA, and presented demographic data concerning minority employees to VA Secretaries Edward Derwinski and Jesse Brown. (Def.'s Mot., Attach. 1 at 19-23.)

4

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[4] A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, there is no genuine dispute of material fact, and indeed, "FOIA cases are typically and appropriately decided on motions for summary judgment." *In Defense of Animals v. Nat'l Inst. of Health*, 543 F.Supp.2d 83, 93 (D.D.C. 2008) (citation omitted). The Court reviews an agency's denial of a fee waiver *de novo*, but its review is limited to the record before the agency. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

### II. PLAINTIFF'S FEE WAIVER REQUEST

FOIA's fee waiver provision states that documents requested from a government agency "shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The requester retains the burden of satisfying both prongs of this standard, *Larson*, 843 F.2d at 1483, and his request must be "reasonably specific and non-conclusory." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003). However,

---

[4] Absent contrary congressional intent, the language of Rule 56 that will be effective December 1, 2010, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

the standard is to be "liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (citation omitted).

Defendant does not address whether plaintiff is commercial requestor, (Def.'s Mem. P. & A. Supp. Summ. J. ["Def.'s Mem."] at 7 n.2), so the Court will assume that plaintiff is a non-commercial requester, thereby warranting liberal construction of the fee waiver standard and satisfying its second prong. As to the first prong, VA regulations prescribe four factors to be considered in determining whether disclosure of information is in the public interest so as to warrant a fee waiver. They are:

> (i) The subject of the request: Whether the subject of the requested records concerns the operations or activities of the government;
> (ii) The informative value of the information to be disclosed: Whether the disclosure is likely to contribute to an understanding of government operations or activities;
> (iii) The contribution to an understanding of the subject by the public likely to result from disclosure: Whether disclosure of the requested information will contribute to public understanding; and
> (iv) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute significantly to public understanding of government operations or activities.

38 C.F.R. § 1.555(f)(2).

Defendant concedes that plaintiff has satisfied the first factor. (Def.'s Mem. at 8.) The Court therefore need only determine whether plaintiff satisfies factors (ii), (iii), and (iv).[5]

---

[5] The parties dispute whether defendant denied plaintiff's administrative appeal for failure to meet factors (ii), (iii), and (iv), as defendant claims, or factors (iii) and (iv) only, as plaintiff claims. (Def.'s Reply Mem. Supp. Summ. J and Opp'n Pl.'s Mot. Summ. J. ["Def.'s Reply"] 5; Pl.'s Mem. P. & A. Supp. Summ. J. ["Pl.'s Mem."] 14.) The issue is material because the Court may not consider reasons for denial not raised by defendant in its denial letter. *Friends of the Coast Fork v. U.S. Dep't of Interior*, 110 F.3d 53, 55 (9th Cir. 1997). However, the dispute is not genuine as defendant's denial letter clearly cites factors (ii), (iii), and (iv) as grounds for denying plaintiff's fee waiver request. (Def.'s Mot., Attach. 1 at 16.) Thus, it is proper for the Court to consider arguments as to all three factors.

Before it can do so, the Court must first address the dispute between the parties regarding the scope of the administrative record. Plaintiff argues that his June 23, 2008 letter constitutes part of the administrative record (Pl.'s Reply Mem. Supp. Summ. J. ["Pl.'s Reply"] at 3-4), while defendant argues that it does not. (Def.'s Reply at 3.) Materials submitted to the agency after it has rendered its final decision are generally outside the scope of the administrative record. *See, e.g.*, *Jarvik v. C.I.A.*, 495 F.Supp.2d 67, 71-72 (D.D.C. 2007) (letter mailed to agency after its final denial of appeal was not part of administrative record because "[c]orrespondence and material exchanged after the initial determination and up to the appeal decision constitute 'materials related to the administrative appeal,' not a letter filed two months later") (citation omitted); *Larson*, 843 F.2d at 1483 (letter appended to plaintiff's opposition to agency's motion for summary judgment and submitted after agency had ruled on plaintiff's administrative appeal was not part of administrative record). However, as explained more fully below, even if the information submitted in plaintiff's June 23, 2008 letter were to be considered as part of the administrative record, it does not change the Court's analysis. It is therefore unnecessary to resolve the issue of whether the letter is properly before the Court.[6]

In concluding that the agency correctly decided to reject plaintiff's fee waiver request, the Court finds that plaintiff has failed to satisfy factor (ii) of the VA's fee waiver regulation regarding the informative value of the information to be disclosed. Under this factor, the Court is to consider the "objectives and reasons" given by the requester in support of the fee waiver. *In*

---

[6] The Court's treatment of plaintiff's letter is proper under the circumstances of this case because there is less concern here, as compared to *Jarvik*, that considering the letter would excuse plaintiff from exhausting his administrative remedies. In *Jarvik*, the agency had made an initial determination that the information in plaintiff's untimely letter did not warrant a fee waiver, but there was no indication that plaintiff had administratively appealed that decision. *Jarvik*, 495 F.Supp.2d at 71-72. Here, by contrast, plaintiff's letter was at least considered and ruled upon by the VA's Office of the General Counsel, the office responsible for administrative FOIA appeals, even if was not ruled upon by the General Counsel himself. *See* 38 C.F.R. §1.557.

*Defense of Animals*, 543 F.Supp.2d at 109. Plaintiff claims that his FOIA request is for the purpose of evaluating whether there are any "significant racial training and travel disparities" within the ITC. (Pl.'s Mem. at 3-4.) However, it is undisputed that the records that plaintiff requested do not reveal the racial makeup of the ITC's employees. (Def.'s Mem. at 10.) Plaintiff attempts to remedy this omission by asserting that he is aware of the ITC's racial makeup and intends to survey the entire employee population to verify their racial categories. (Def.'s Mot., Attach. 1 at 19.) These bare assertions fall significantly short of being "reasonably specific" and "non-conclusory." *Rossotti*, 326 F.3d at 1310. Plaintiff provides absolutely no credible basis for his "awareness" of the ITC's racial makeup. He suggests that because the ITC's workforce is small and its employees work within a "small working enclosure," he can "distinguish" their racial makeup (Def.'s Mot., Attach. 1 at 19), presumably based on their appearance. However, if the analysis that plaintiff intends to perform is premised on such imprecise and unscientific racial categorization, it cannot be said to contribute to an understanding of government operations or activities. Furthermore, plaintiff provides no indication that he has the necessary experience preparing or administering reliable demographic surveys or that he even has authorization to do so here. In sum, plaintiff's assertion that he can determine the racial composition of the ITC's employees is a statement unsupported by facts, which is "insufficient to meet the burden placed on fee-waiver requesters." *Judicial Watch Inc. v. DOJ*, 122 F.Supp.2d 5, 9 (D.D.C. 2000).

As plaintiff "does not explain how he plans to extract meaningful information" from the records he has requested, the Court must "evaluate [their] usefulness only from their intrinsic informational content." *Jarvik*, 495 F.Supp.2d at 73. The Court finds that while the ITC's training plan reports, training cost reports, and other training reports technically concern

government operations, they do not, "in any readily apparent way," contribute to an understanding of government operations or activities. *S.A. Ludsin v. Small Bus. Admin.*, 1997 WL 337469, at *5 (S.D.N.Y. June 19, 1997) (finding that the disclosure of appraisals of government property would not contribute to an understanding of government operations). Thus, plaintiff's request fails factor (ii).

It also fails factor (iii) as plaintiff does not, with reasonably specificity, describe his ability to process the information that he has requested or to disseminate it in a manner understandable to the general public. It is undisputed that the information plaintiff requested is both technical and voluminous. (Def.'s Mem. at 11.) Thus, plaintiff must demonstrate that he is able to understand, process, and disseminate the information. *See McClellan*, 835 F.2d at 1286. Plaintiff argues that his background as an IT specialist and his prior experience analyzing racial data as a member of AFTE, NAACPFSTF, and BIG demonstrate his ability to understand and process technical and voluminous data. (Def.'s Mot., Attach. 1 at 19-23.) However, plaintiff does not explain how his background in information technology qualifies him to perform statistical analysis, which is an entirely different subject matter. This is therefore unlike the situation in *Western Watersheds Project v. Brown*, 318 F.Supp.2d 1036 (D. Idaho 2004), where the court found that plaintiff had demonstrated its ability to analyze grazing management strategies because one of its members taught high school classes on that very subject. *Id.* at 1040 & n.3. And while plaintiff's job description includes conducting "in-depth research" (Def.'s Mot., Attach. 1 at 20), there is no indication that this research involves statistical analysis or demographic data.

Additionally, plaintiff claims that he has experience analyzing racial data but offers no supporting evidence. In contrast, in *Southern Utah Wilderness Alliance v. U.S. Bureau of Land*

9

*Management*, 402 F.Supp.2d 82 (D.D.C. 2005), plaintiff provided "sufficient evidence" of its expertise in analyzing records pertaining to cultural resources by citing "specific examples" of when it had raised concerns about impacts on cultural resources in comments to federal agencies and by submitting a report that it had recently written on that subject. *Id.* at 87-88. Furthermore, while plaintiff indicated that he has contacted Temple University's School of Business and Management for assistance in analyzing the requested records (Def.'s Mot., Attach. 1 at 10), he fails to indicate that the School has agreed to assist him. Again, this is unlike *Southern Utah*, where plaintiff indicated that it had in fact *contracted* with archeologists to help it assess impacts to cultural resources on lands belonging to the Bureau of Land Management. *Id.* at 86. For these reasons, the Court finds that plaintiff has not adequately demonstrated his ability to process the requested data.

However, even if the Court were to find otherwise, plaintiff would still not satisfy factor (iii) because he has not described in reasonably specific and non-conclusory terms his ability to disseminate the requested information. Merely stating one's intention to disseminate information does not satisfy this factor; instead, there must be some showing of one's ability to actually disseminate the information. *See, e.g.*, *Larson*, 843 F.2d at 1483 (plaintiff was unable to disseminate information where he had "failed to identify the newspaper company to which he intended to release the requested information . . . or his professional or personal contacts with any major newspaper companies"); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 66 n.11 (D.C. Cir. 1990) (finding the statement "I am a writer and lecturer who has disseminated such information in the past, and I intend to do so in the future" to be conclusory).

Plaintiff asserts that he intends to disseminate the requested information to news, labor, and civil rights organizations, as well as congressional committees. However, his case is clearly

distinguishable from other cases in which FOIA requesters successfully demonstrated their ability to disseminate information through news outlets and organizations. For example, in *Southern Utah*, plaintiff had cited over fifty articles discussing plaintiff's "influence and participation on public lands grazing issues," as well as its history of distributing information through media outlets, which in turn contacted plaintiff for comment when issues regarding public lands in southern Utah arose. 402 F.Supp.2d at 86. Similarly, in *In Defense of Animals*, the Court found that plaintiff had demonstrated its ability to disseminate information by explaining "in great detail" how it had disseminated information received from FOIA requests to regulatory agencies, the public, and Congress, and how this had led to major discoveries of violations and prompted federal agencies to take action to curtail abuses. 543 F.Supp.2d at 110.

Here, plaintiff identifies only one newspaper, the *Federal Times*, to which he intends to distribute his research, but he does not indicate that he has any professional or personal contacts with that newspaper or a history of publishing in it that would lend credence to his statement of intention. Additionally, a comparison to *Southern Utah* and *In Defense of Animals* makes clear that plaintiff's membership in labor and civil rights organizations, and his unsupported assertion that he "routinely" meets with "many" congressional delegations regarding employment issues at the VA, are insufficient to demonstrate his ability to disseminate information. Finally, his statement that he had presented demographic data concerning minority employees to two VA Secretaries, without any details as to the content or context of the presentations, amounts to little more than a statement than plaintiff has "disseminated such information in the past, and . . . intend[s] to do so in the future." *Oglesby*, 920 F.2d at 66 n.11.

Finally, this is not a case where plaintiff operates his own means of information dissemination such as a newsletter or a website. *See, e.g.*, *Rossotti*, 326 F.3d at 1314 (plaintiff

communicated FOIA information via, *inter alia*, a newsletter with a monthly circulation of over 300,000 copies nationwide, a website that logged up to 1,000,000 visitors in a single day, and an "Infonet" listserve with over 60,000 subscribers); *In Defense of Animals*, 543 F.Supp.2d at 110 (plaintiff disseminated FOIA information through its website and associate sites which received over 55,000 hits per day and a quarterly newsletter which reached over 65,000 people in all 50 states and abroad); *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1180 (10th Cir. 2005) (plaintiff published an online newsletter e-mailed to more than 2,500 people and intended to establish an interactive grazing web site with information it obtained from the agency). Instead, plaintiff's ability to disseminate information depends entirely on external sources, and as explained above, there has been no credible showing that these sources are available to plaintiff.

As plaintiff has not demonstrated that disclosure would increase public understanding of government operations under factors (ii) and (iii) of the VA regulations, he is unable to establish that disclosure will *significantly* increase such understanding under factor (iv). 38 C.F.R. § 1.555(f)(2)(iv). Thus, it is irrelevant that the records he requested and his proposed racial disparity research are not already available to the public. (Pl.'s Mem. at 20.)

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff fails to qualify for a waiver of the fees associated with his FOIA request, and it will therefore grant defendant's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: November 30, 2010